UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA SCHWARZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>　　　　　Defendant. | Case No. 19-cv-02370-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Docket No. 35 |

　　　　This action is a claim to review the denial of long term disability benefits under an employee benefit plan regulated by the Employee Retirement Income Security Act ("ERISA"). Plaintiff Lisa Schwarz is a former employee of YP Holdings LLC ("YP") who has suffered from recurring stage IIIC ovarian cancer and related complications for the last eight years. As a result of her condition, Ms. Schwarz began receiving long term disability benefits from Hartford Life and Accident Insurance Company ("Hartford") in 2017. On August 30, 2018, however, Hartford denied Ms. Schwarz's claim for benefits; it upheld this denial on appeal the following April. Ms. Schwarz now brings suit against Hartford and YP Holdings LLC Welfare Benefit Plan ("YP Plan"), seeking: (1) an award of benefits in the amount not paid from August 30, 2018; (2) an order determining that she is entitled to future payments as long as she is disabled as defined in the benefit plan; and (3) reasonable attorneys' fees. Currently pending before the Court is Ms. Schwarz's motion to expand the Administrative Record or, in the alternative, a stay and remand. Having considered the parties' briefs, accompanying exhibits and oral arguments, the Court hereby **GRANTS** Ms. Schwarz's motion to stay the instant proceedings and remands the matter back to Hartford for reconsideration of Ms. Schwarz's eligibility for disability benefits.

# I.    BACKGROUND

A.    Factual Background

Plaintiff Lisa Schwarz began working as an inside salesperson for YP (the corporation establishing and maintaining Defendant YP Holdings LLC Welfare Benefit Plan) in 2007. Docket No. 35 ("Mot.") at 4. As part of her employment with YP, Ms. Schwarz was covered by a long term disability plan funded by an insurance policy issued by Hartford. *Id.* at 7. On January 26, 2012, Ms. Schwarz was diagnosed with stage III ovarian cancer. *Id.* at 4. In 2012 and again in 2014 (when her cancer resurfaced), she completed four-month intravenous chemotherapy treatments. *Id.* at 4-5. During these periods, she underwent regular treatment sessions that resulted in "hair loss, constant pain, fatigue, weakness, and nausea." *Id.* at 5.

When her cancer again returned in October 2015, Ms. Schwarz's physician prescribed an oral chemotherapy medication instead of intravenous chemotherapy. *Id.* Her cancer again went into remission two months later. *Id.* However, in August 2016, Ms. Schwarz learned that her cancer had likely returned once more. *Id.* at 6. This news, combined with the various symptoms of her anti-cancer drugs—"loss of appetite, severe anxiety, depression, and neuropath[h]ic pains"—led her to leave work again. *Id.*

On January 9, 2017, Ms. Schwarz submitted a claim for long term disability benefits to Hartford. *Id.* at 8. Hartford approved this claim on February 13 and began to pay Ms. Schwarz disability benefits. *Id.* During this period, Ms. Schwarz also applied for Social Security disability insurance and was approved without the need for a hearing. *Id.*

Meanwhile, during a January 16, 2017 consultation, Ms. Schwarz's physician "opined . . . that [her] cancer was active again" and suggested surgery to remove an enlarged lymph node. *Id.* at 7. Ms. Schwarz thus underwent a robot-assisted surgical dissection of this lymph node on February 22, 2017. *Id.* The removed node did ***not*** show signs of cancer. *Id.* However, post-surgery analysis from Ms. Schwarz's surgeon summarized that this did ***not*** mean Ms. Schwarz was cancer-free:

> Although I removed all the lymph nodes that were visible on the left side of the pelvis, they all came back negative for cancer. Therefore, ***I think that unfortunately the involved node was much***

*more deeply buried so as to make it impossible to see it at surgery*.

*Id.* (emphasis added). Ms. Schwarz subsequently completed a course of radiation for the involved node from May 1 to May 4, 2017, and the administrating physician opined that she had "recovered well from the acute effects of radiation" on June 26, 2017. *Id.*

On June 25, 2017, Ms. Schwarz again met with her oncologist and reported that she was "getting emotionally exhausted being on chemo" and that her side effects were "not tolerable." *Id.* at 8. Her oncologist thus ordered a six- to seven-week break from the chemotherapy drug which was later extended further because her CA 125 numbers[1] continued to be low. *Id.*

In March 2018, Ms. Schwarz began regular sessions with therapist Dr. Rik Rusovick for her "major depressive order, recurrent, severe," and, per Dr. Rusovick, "consistently expressed being in severe physical pain" in her arms, hands, and other areas of her body. *Id.*

B.   Claims Handling by Hartford

As mentioned, Ms. Schwarz submitted a claim for long term disability benefits on January 9, 2017. *Id.* at 8. Hartford approved the claim and began paying benefits to Ms. Schwarz on February 13, 2017. *Id.* Hartford continued to assess her entitlement to benefits, and upon receiving Ms. Schwarz's updated medical records, engaged a consultant—oncologist Dr. Susan Lawrence—on June 1, 2018 to review the records for her work-related limitations. *Id.* at 9; Docket No. 37 ("Opp.") at 4. Dr. Lawrence spoke with Ms. Schwarz's physician, who asserted that "the claimant is doing very well from an oncology standpoint, and is free of disease and is off all treatment" and "has no medically necessary restrictions or limitations from an oncology standpoint." *Id.* at 5. Dr. Lawrence concluded that Ms. Schwarz "was able to work 40 hours per week in her own occupation" without reference to Ms. Schwarz's ongoing pain. *Id.*; Mot. at 9. Dr. Lawrence did remark that Ms. Schwarz experienced mental health difficulties and deferred to a psychiatry reviewer on this front (but Hartford subsequently failed to engage such a reviewer). Mot. at 9-10. Additionally, Dr. Lawrence summarized Ms. Schwarz's February 2017 surgical procedure as leaving her "cancer free" despite her surgeon's comments that she was simply

_____

[1] High levels of cancer antigen ("CA") 125 protein are an indication that the cancer is active.

"unable to reach the cancerous nodes." *Id.* at 9.

Following this review, Hartford denied Ms. Schwarz's claim on August 30, 2018 (effective that day) after "reviewing all of the medical records and submissions" and Dr. Lawrence's report. Opp. at 5. Hartford's denial letter used the wrong definition of disability; instead of referencing the essential duties of "Any Occupation," it discussed whether Ms. Schwarz's conditions precluded her from performing the essential duties of her "own occupation."[2] Mot. at 10.

Ms. Schwarz appealed her denial on January 10, 2019. *Id.* at 11. A month later, on February 5, 2019, Ms. Schwarz's counsel informed Hartford that she had restarted chemotherapy in response to her increasing CA 125. *Id.* at 12.

In response, Hartford commissioned two medical file reviews by psychiatrist Dr. E. Greer Richardson and oncologist Dr. Judy Schmidt. *Id.* In the instant motion, Ms. Schwarz emphasizes that Dr. Richardson's psychiatric file review was missing various records of Ms. Schwarz's psychiatric treatment. *Id.* at 13. In particular, Ms. Schwarz observes that Dr. Richardson's review never mentions: (1) her treatment records with psychiatrist Dr. Laurie Lo-Yi Chen from December 2016 to April 2017; and (2) her treatment records with Dr. Rusovick from March 12, 2018 to September 2018, which are also missing from the Record—the earliest Dr. Rusovick treatment notes discussed in Dr. Richardson's review, and indeed the earliest Dr. Rusovick treatment notes included in the Record, are from October 19, 2018. *Id.* at 12-13. Hartford was aware of Ms. Schwarz's earlier treatments with Dr. Rusovick: on March 15, 2018, Dr. Chen told one of Hartford's employees that Ms. Schwarz "is seeing Richard Rusovick now," and in a December 7, 2018 letter in the Record, Dr. Rusovick stated that "[o]ur work together began on 3/12/18 and as of 12/7/18 we've met for approximately 12 sessions." *Id.* at 13. In her file review, Dr. Richardson concluded that Ms. Schwarz had "no psychiatric restrictions and limitations." *Id.* Dr. Schmidt's

---

[2] Hartford's policy provided long term disability benefits when an insured was "Disabled while Insured under the Policy," and defined "disability" as "the inability to perform 'one or more of the Essential Duties of Any Occupation' due to injury or sickness." Mot. at 7. "Any Occupation," in turn, was defined as "an occupation [for] which the insured is 'qualified by education, training or experience,' and meets a certain income threshold," and "Essential Duties" were those responsibilities "fundamental or inherent to the occupation" that could not be "reasonably omitted or changed." *Id.*

oncology review, however, appeared to leave out certain material notes from Ms. Schwarz's physicians which provided a fuller context. *Id.* at 14. Dr. Schmidt summarized a nurse practitioner's February 6, 2017 description of Ms. Schwarz's "current level of activity" as "gym[,] treadmill, weights." *Id.* The actual report, however, appended with the qualification "(not good at going for the past 2 months)," but Dr. Schmidt omitted this detail. *Id.* Also, Dr. Schmidt described Ms. Schwarz's February 22, 2017 surgery (discussed above) as "6 lymph nodes with no evidence of metastatic carcinoma"—leaving out her surgeon's critical remark that this result meant the cancerous node was "unfortunately . . . much more deeply buried so as to make it impossible to see it at surgery." *Id.*

On March 21, 2019, Hartford sent Dr. Richardson's psychiatric review and Dr. Schmidt's oncology review to Ms. Schwarz's therapist and physician respectively for comment. *Id.* Hartford notified Ms. Schwarz's attorney that these reports had been sent, but it did not give him a copy of the reports themselves. *Id.* at 15. Her counsel requested copies of the reports on April 3, but on April 4, Hartford declined to provide these documents until "after the appeal decision has been rendered if [Hartford] . . . uphold[s] the adverse benefit determination." *Id.* It appears that neither Ms. Schwarz's therapist or physician responded to the Hartford reviews.

Hartford wrote to Ms. Schwarz's counsel on April 9, 2019 to notify him that the denial of her claim had been upheld on appeal. Opp. at 7. The letter summarized the medical records reviewed and the two file reviews conducted. *Id.* at 8. Noting that the medical records "did not evidence any psychiatric limitations," and "Plaintiff's cancer was largely asymptomatic and she was not under undergoing [sic] any treatment," the letter concluded that terminating Ms. Schwarz's claim was appropriate. *Id.*

## II.     DISCUSSION

While Ms. Schwarz moves to expand the Administrative Record, Ms. Schwarz alternatively moves for a stay of the instant proceeding and an order for the parties to seek reconsideration before the plan administrator with the benefit of a full Record. Mot. at 23. She alleges that, among other errors, Hartford (1) committed a procedural violation when it refused to provide her (through her attorney) with its file reviews prior to her final denial, and (2) failed its

fiduciary duty to conduct an adequate investigation of her claim at multiple stages in the administrative process. Mot. at 14-15; Reply at 8-9. Hartford opposes such request because, according to it, remands are inappropriate to consider "new, post-denial medical evidence after the ERISA administrative review [is] completed." Opp. at 25.

A.      Hartford's Procedural Violation

ERISA § 503 provides the following:

> In accordance with the regulations of the Secretary, every employee benefit plan shall –
>
> . . .
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Title 29 C.F.R. § 2560.503-1(h)(4)(i) sheds further light on this obligation by requiring that benefit plans:

> Provide that before the plan can issue an adverse benefit determination on review on a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan . . . such evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided . . . to give the claimant a reasonable opportunity to respond prior to that date.

29 C.F.R. § 2560.503-1(h)(4)(i).[3] Per the Ninth Circuit, "[a] physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 680 (9th Cir. 2011). Failure to satisfy this provision would deprive the claimant of "a reasonable opportunity for a full and fair review." 29 C.F.R. § 2560.503-1(h)(4)(i).

---

[3] Hartford contended that this clause applied only to claims filed on or after April 1, 2018, while Ms. Schwarz argued the provision excluded only those claims filed between January 17, 2017 and April 1, 2018. *Id.* Ms. Schwarz is correct—the regulation generally applies to claims filed on or after January 1, 2002, the April 1, 2018 effective date applies to provisions outside of § 2560.503-1(h)(4), and (h)(4) is itself excluded only for claims filed between January 17, 2017 and April 1, 2018. C.F.R. § 2560.503-1(p)(1),(3)-(4). Ms. Schwarz's disability benefits claim was filed on January 9, 2017—before January 17—so this clause does apply. Mot. at 8.

Here, Ms. Schwarz contends that Hartford violated the Act when it refused to provide her attorney with its two expert file reviews prior to its final denial. Mot. at p. 13. Ms. Schwarz's attorney requested to review and respond to the physician file reviews on which Hartford based its appeal decision; Hartford refused to send the relevant materials to Ms. Schwarz or her counsel. Mot. at 15. However, Hartford **did** provide its two physicians' file reviews to Ms. Schwarz's treating physicians and notified Ms. Schwarz's counsel (without providing a copy) on March 21, 2019—around two and a half weeks before Hartford's final denial on April 9. Opp. at 11. Regardless, considering the plain text of the regulation, Hartford did violate the applicable procedural requirement. 29 C.F.R. § 2560.503-1(h)(4) explicitly mandates that administrators send relied-upon evidence to "the claimant," *i.e.* Ms. Schwarz herself, not just to the claimant's physicians. 29 C.F.R. § 2560.503-1(h)(4)(i). Ms. Schwarz's physicians are not her legal representatives in regard to her prosecution of her claim for disability benefits. Hence, neither Ms. Schwarz nor her legal representatives were provided with the reviews. Indeed, *Salomaa* found that the plan violated the statute because it "did not give Salomaa *and*"—not or—". . . his physicians access to the two medical reports"—thereby implying that sending materials to only the claimant's physicians is not sufficient to satisfy § 2560.503-1(h)(4)(i). [4] *See Salomaa*, 642 F.3d at 679 (emphasis added).

To be sure, "under Ninth Circuit law, only substantial compliance with ERISA's notice requirements is required." *Barnes v. AT&T Pension Benefit Plan*, No. C-08-4058 EMC, 2012 U.S. Dist. LEXIS 65819, 13 (N.D. Cal. May 10, 2012) (citing *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1032 (9th Cir. 2006)). Nevertheless, Hartford's violation **does** show that it failed to substantially comply with ERISA's procedural obligations. *See id.* Because she did not see Hartford's two file reviews until after the final denial, Ms. Schwarz (and her legal counsel) never had the chance to evaluate or rebut the file reviews' contentions. Mot. at 15. In particular, Ms.

---

[4] Hartford argues that Ms. Schwarz's counsel submitted this request too late for it to respond—her request was on April 3, 2019, but the final decision was due on April 9, 2019. Opp. at 10-11. However, the date of Ms. Schwarz's request is irrelevant to Hartford's duty because C.F.R. § 2560.503-1(h)(4)(i) requires plan administrators to send the relied-upon materials **regardless** of whether the claimant asks for it.

Schwarz points out that Dr. Richardson's psychiatric review missed "most of the psychiatric treatment notes in the Record," including her treatment records with Dr. Chen from December 2016 to April 2017 and with Dr. Rusovick from March 2018 to September 2018. *Id.* at 12-13. Ms. Schwarz also observes that Dr. Schmidt's oncology review omitted certain important, context-setting notes from her physicians. *Id.* at 14. As examples, she first notes that Dr. Schmidt reported Ms. Schwarz's current activity level as "gym[,] treadmill, weights," omitting the crucial "(not good at going for the past 2 months)" qualification in the original report. *Id.* at 14. Second, Ms. Schwarz asserts that Dr. Schmidt summarizes her February 16, 2017 surgery as "6 lymph nodes [removed] with no evidence of metastatic carcinoma." *Id.* However, the full record indicated the surgeon had warned that this result was not good news: "[U]nfortunately the involved node was much more deeply buried so as to make it impossible to see it at surgery." *Id.* Had Ms. Schwarz received these two file reviews prior to April 9, she would have been able to catch these omissions and contest them by submitting the missing psychiatric records or sending a rebuttal report. Without the opportunity to provide such a response, Ms. Schwarz was unable to present her best arguments to Hartford. Hartford thus deprived Ms. Schwarz of the "full and fair review" required by 29 U.S.C. § 1133(2).

The Ninth Circuit has held that "the usual remedy for a violation of § 1133 is 'to remand to the plan administrator so the claimant gets the benefit of a full and fair review.'" *Chuck*, 455 F.3d at 1035; *see also Teen Help v. Operating Eng'rs Health & Welfare Tr. Fund*, No. C 98-2084 VRW, 1999 U.S. Dist. LEXIS 21989, 16 (N.D. Cal. Aug. 24, 1999) ("Normally, where the plan administrator has failed to comply with ERISA's procedural guidelines and the plaintiff/participant has preserved his objection to the plan administrator's noncompliance, the proper course of action for the court is remand to the plan administrator for a 'full and fair review'").

As an example, in *D'Emanuele*, the Central District of California ruled that the defendant plan's violation of § 1133(2) served as independently sufficient grounds for "holding that plaintiff is entitled, at a minimum, to have this matter remanded to the Plan for reconsideration." *D'Emanuele v. Montgomery Ward & Co.*, No. CV 83-7349-RJK (MCx), 1987 U.S. Dist. LEXIS

16830, 68, 83-84 (C.D. Cal. Aug. 24, 1987).  In its initial, intermediate, and final denial letters, the defendant plan repeatedly violated ERISA procedural requirements by introducing additional evidence that the plaintiff did not see prior to receiving the letters.  *Id.* at 82-83.  "After each such phase," the court remarked, "plaintiff spent time, energy and/or money . . . to respond to such evidence, only to be denied based upon new evidence yet again." *Id.* at 84.  Because the plaintiff "was continually maintained in the position of being one step behind the adjudicative process," the court held that the defendant plan's procedural violation constituted sufficient grounds for a remand.  *Id.* at 68.

Ms. Schwarz's experience is analogous to that of the *D'Emanuele* plaintiff.  *See id.* at 82-83.  She, too, was "maintained in the position of being one step behind the adjudicative process" when Hartford refused to provide her with its two file reviews until after its final denial decision.  Mot. at 13.  As such, Hartford's § 1133(2) violation, like the *D'Emanuele* violation, serves as an independently sufficient reason to remand Ms. Schwarz's case to Hartford.  *See D'Emanuele*, 1987 U.S. Dist. LEXIS 16830 at 68.

The Court acknowledges that remand is improper if it would merely serve as a "useless formality." *See, e.g., Barnes*, 2012 U.S. Dist. LEXIS 65819 at 19.  Remand here would ***not*** be useless, however, since Ms. Schwarz would be able to supplement the Record with the omitted psychiatric records and perhaps one or more rebuttal reports.  The additional information may make a material difference in Hartford's ultimate decision.

B.      Hartford's Fiduciary Duty

Further, as YP Plan's claims administrator, Hartford had a fiduciary duty to "adequately investigate the claim," and its failure to do so provides additional support for a remand.  Opp. at 1; *see Rodgers v. Metro. Life Ins. Co.*, 655 F. Supp. 2d 1081, 1087 (N.D. Cal. 2009).  Claimants do "carr[y] the burden of showing [they] [are] . . . entitled to benefits," but "ERISA administrators have a fiduciary duty to conduct an adequate investigation when considering a claim for benefits." *Gary v. Unum Life. Ins. Co. of Am.*, 388 F. Supp. 3d 1254, 1278-79 (D. Or. 2019).  This obligation requires plan administrators to engage in "meaningful dialogue" with the beneficiary, and "if the plan administrators believe that more information is needed to make a reasoned decision, they

9

must ask for it." *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997). ERISA administrators "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement." *Rodgers*, 655 F. Supp. 2d at 1087.

*Jantos v. Prudential Life Ins. Co. of Am.*, No. 2:15-cv-01530-RAJ, 2019 U.S. Dist. LEXIS 47146 (W.D. Wash. Mar. 21, 2019), is instructive. In *Jantos*, the court remanded the case to the defendant plan administrator on a matter for which the administrator had conducted a "likely inadequate" investigation. *Jantos*, 2019 U.S. Dist. LEXIS 47146 at 18. The administrative record in *Jantos* revealed indications that the plaintiff's "gross monthly income" was more than just her annual salary, *e.g.* her W-2's showed that her income was much higher than her salary. *Id.* Also, both the plaintiff and her company "repeatedly informed" the defendant that she was a shareholder in her company, which "should have indicated to Defendant that Plaintiff may have income sources beyond those of a typical employee." *Id.* at 19. These hints, the court observed, "should have triggered additional inquiries into Plaintiff's compensation structure, not the cessation of Defendant's investigation." *Id.* Nonetheless, the defendant did not look into these inconsistencies and instead "used the ambiguity as an excuse to avoid further investigation." *Id.* In light of this inadequate investigation, the court remanded the matter back to the defendant to reexamine the plaintiff's income sources. *Id.* at 22.

Hartford similarly failed to adequately investigate Ms. Schwarz's psychiatric condition at multiple stages of her administrative appeal. *See id.* at 18. First, prior to its initial denial of Ms. Schwarz's claim, Hartford's file reviewer Dr. Lawrence explicitly noted Ms. Schwarz's significant mental health difficulties, *e.g.* "significant anxiety and depression . . . and family issues including a severely mentally ill son." Mot. at 9. Dr. Lawrence thus suggested that Hartford "employ a psychiatry reviewer to determine whether Ms. Schwarz had any restrictions caused by her depression and anxiety." *Id.* at 10. Hartford subsequently failed to engage such a reviewer, and sent Ms. Schwarz her initial denial letter based on Dr. Lawrence's report. *Id.* Like the W-2's in *Jantos*, Dr. Lawrence's remarks to Hartford should have "triggered additional inquiries" into Ms. Schwarz's mental health records, but ultimately led only to "the cessation of Defendant's

investigation." *See Jantos*, 2019 U.S. Dist. LEXIS 47146 at 19.  Hartford again failed to meet its fiduciary duty while reviewing Ms. Schwarz's administrative appeal.  Mot. at 12.  The Administrative Record contained various psychiatric treatment notes from Dr. Rusovick indicating that Ms. Schwarz's treatments with Dr. Rusovick began in March 2018.  *Id.* at 13.  Hartford also knew of this timeline: on March 15, 2018, one of Hartford's employees spoke with Dr. Chen (another of Ms. Schwarz's therapists), who stated that Ms. Schwarz was "seeing Richard Rusovick now," had met with him on March 12, and was scheduled to meet with him again on March 20. *Id.*  However, Dr. Richardson's psychiatric file review—one of two reviews that Hartford based its final denial on—did not reference any of her meetings with Dr. Rusovick between March and September of 2018, and Hartford did not add these treatment records to the Administrative Record.  *Id.*  Given Dr. Rusovick's treatment notes in the Record and Hartford's knowledge of Ms. Schwarz's treatment timeline, Hartford quite clearly "shut [its] . . . eyes to readily available information" here, even "when the evidence in the record suggest[ed] that the information might confirm the beneficiary's theory of entitlement."  *Rodgers*, 655 F. Supp. 2d at 1087.  Just as in *Jantos*, then, Hartford's failure to fulfill its fiduciary obligation serves as further support for this Court's remand.  *See Jantos*, 2019 U.S. Dist. LEXIS 47146 at 22.

///

///

///

///

///

///

///

///

///

///

///

///

### III.      <u>CONCLUSION</u>

In light of Hartford's procedural violation and its failure to meet its fiduciary duty to conduct an adequate investigation, the Court hereby stays the instant proceeding[5] and **GRANTS** Ms. Schwarz's request to remand to the plan administrator for reconsideration with the benefit of a full Record.

This order disposes of Docket No. 35.

**IT IS SO ORDERED**.

Dated: March 6, 2020

_____
EDWARD M. CHEN
United States District Judge

---

[5] In Hartford's opposition brief, it requests the Court sanction Ms. Schwarz by excluding her belatedly-produced medical records. Because a remand is appropriate, this Court **DENIES** Hartford's request as moot, but without prejudice.